IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Brian C.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____

Civ. No. 6:20-cv-575-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On May 26, 2017, Plaintiff filed an application for benefits, alleging disability as of October 18, 2016. Tr. 17.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 17-25. Plaintiff argues the ALJ erred in finding him less-than fully credible and in giving little weight to the opinions of his treating physicians. Because the Commissioner's decision is not supported by substantial evidence, the Commissioner's decision is REVERSED and this matter is REMANDED for calculation of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

**STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: cervical degenerative disc disease, brachial plexus neuropathy, right ulnar neuropathy, and obesity. Tr. 19. The ALJ concluded Plaintiff had the RFC to perform light work with certain additional restrictions, including that Plaintiff was limited to only occasionally reaching overhead and only occasional handling and fingering with his right arm. Tr. 21. Plaintiff argues the ALJ did not capture the extent of his limitations. The Court agrees.

Plaintiff's most severe limitation was due to neuropathy in his right upper extremity. In a June 2017 function report, Plaintiff stated his right arm limited his ability to work, noting it functioned at less-than 50% capacity "and extreamly [sic] weak had dont [sic] open all the way cant [sic] straighten fingers very weak hand/arm." Tr. 182. At the March 2019 hearing, Plaintiff testified his right hand and arm became an issue in October 2016. Tr. 38. Prior to that time, although he had some problems with supervisors, he was able to work. Tr. 36-38. Plaintiff stated, "I got no grip strength, the fingers don't work correctly, I can't straighten them out, and I can't hardly, the three on the outer side, I can't hardly feel." Tr. 38 Plaintiff could not open his hand quickly enough to grab objects when reaching. Tr. 38-39. Although Plaintiff was only in moderate pain, half of his hand was numb and "It's never going away." Tr. 39. Plaintiff noted his medical providers limited him to lifting no more than 10 pounds. Tr. 40.

The ALJ agreed Plaintiff's right arm numbness limited his ability to work. As noted above, the ALJ concluded Plaintiff could perform light work so long as he only occasionally reach with his right arm and only occasionally handle and finger with his right hand. Tr. 21. In

formulating Plaintiff's RFC, the ALJ found that claimant was not as limited as alleged. Tr. 22.

Specifically, the ALJ noted:

> As for the claimant's statements about the intensity, persistence, and limiting
> effects of his or her symptoms, they are inconsistent because they are not
> supported by the objective medical evidence. The claimant's treatment records
> also show that he has been noncompliant in his treatment suggesting that his
> impairments are not as disabling as he has alleged.
>
> * * * *
>
> In May 2018, the claimant's treatment notes state, "he is wanting to get a repeat
> EMG to document that he continues to have a dysfunction of his right arm from
> this condition as he feels like he is not able to work in any manual kind of job,
> given he is right handed[.]" This record, when paired with his lack of interest in
> education or insulin, suggests that the claimant is foregoing potentially beneficial
> treatment in the interest of maintaining his limited functioning and receiving a
> favorable disposition to his disability application.

Tr. 22 (internal citation omitted).

These findings are not supported by the record. Plaintiff's right arm neuropathy was

supported by objective medical evidence in the form of physical examinations by treating

physicians and multiple EMGs. In October 2016, Plaintiff's treating physician Dr. Lorne Bigley,

MD noted "he clearly has something causing denervation of the hand and arm musculature." Tr.

237. Upon examination, Dr. Bigley noted Plaintiff had atrophy in his right hand and was unable

to push his fingers together, had difficulty spreading his fingers, had a "minimally positive

Sperling test," with muscle deficits in his biceps and triceps. Tr. 238. Dr. Bigley concluded "His

symptoms and clinical picture are consistent with neurogenic complications found in his nerve

conduction studies." Dr. Bigley referred Plaintiff to James Kiley, MD, a neurologist.

Dr. Kiley examined Plaintiff the following month. Dr. Kiley noted: "Physical exam

shows atrophy of the ulnar hand muscles and near absent sensation that splits the ring finger and

involves the entire fifth finger." Tr. 257. In contrast to the ALJ's finding that objective testing

did not support Plaintiff's complaints, Dr. Kiley noted the EMG confirmed serious issues with

Plaintiff's right arm: "In the presence of such a significant finding on EMG, I might be inclined to think that ulnar nerve entrapment at the elbow constitutes the entirety of this patient's somatic complaints." On exam, Plaintiff exhibited "significant weakness" in his right arm. Tr. 262. "With ulnar muscles tested, he is significantly weak with finger abductors and with finger flexors. He has marked atrophy in his intrinsic hand muscles and the FDI is atrophic." Tr. 262. Dr. Kiley noted, "He also has some sensory loss as well, but this seems mild in proportion to the degree of motor deficits he is experiencing." Tr. 262. Dr. Kiley ordered another EMG.

Two months later, following the second EMG, Dr. Kiley reported that he "did repeat the actual EMG on the right arm and indeed there was more widespread abnormalities than the initial suggested." Tr. 265. On examination, strength testing "shows significant weakness in the right arm, including with intrinsic muscles of the hand, grip strength, finger flexors, wrist flexion, and to a mild degree, wrist extension. He is also noted to have significant weakness with finger extension. Triceps muscle is significantly weak." Tr. 266. Following a third EMG in May 2018, Dr. Kiley noted "Continued severe active right-sided brachial plexopathy/mononeuritis multiplex, primarily involving radial and ulnar nerve supplied muscles with C7 and C8 myotomes. Since testing done last year, sensory responses are more attenuated (with the ulnar now being absent), ulnar motor nerve is markedly attenuated, and now all motor nerves show prolonged distal latencies." Tr. 308. These objective tests and findings aligned with Plaintiff's subjective statements regarding the severity of his neuropathy and the resulting limitations.

The ALJ also found Plaintiff's failure to follow treatment recommendations indicated he was not as limited as alleged. Tr. 22. In March 2018, Dr. Bigley noted Plaintiff "is absolutely not interested now in education or insulin. He may consider this in November when he gets his license back." Tr. 299. But the ALJ did not find Plaintiff's diabetes to be a severe impairment.

Tr. 19. And while failing to control his diabetes ultimately led to Plaintiff's brachial plexus and right ulnar neuropathy, there is no indication that controlling his diabetes would result in his neuropathy going away. To the contrary, Dr. Kiley concluded "that there is not much that can be done about the brachial plexus neuropathy. Physical therapy may help, but probably not." Tr. 231. Dr. Bigley agreed Plaintiff's neuropathy was likely to continue indefinitely, Tr. 287, and "it looks like his disability likely is going to be static," Tr. 307. If Plaintiff complained of significant limitations from diabetes, the ALJ could point to Plaintiff's lack of interest in controlling his diabetes as a valid reason for finding Plaintiff not entirely credible as to the extent of any limitations caused by diabetes. But Plaintiff's limitations stemmed not from diabetes directly, but from neuropathy (which likely arose from Plaintiff's diabetes). To use an analogy, an ALJ may not point to a claimant's voluntary refusal to wear a seat belt to show the claimant overstated the limitations resulting from injuries sustained in a car crash. Stated differently, any failure here to follow a doctor's recommendations regarding diabetes is not a valid reason to find Plaintiff not credible as to limitations from neuropathy.

The ALJ also concluded that the fact that Plaintiff sought a third EMG to document his condition, "when paired with his lack of interest in education or insulin, suggests that the claimant is foregoing potentially beneficial treatment in the interest of maintaining his limited functioning and receiving a favorable disposition to his disability application." Tr. 22. As noted by Plaintiff, however, 20 C.F.R. § 416.912(a) puts the burden on a person applying for disability benefits to establish they are disabled. That burden includes providing a "complete and detailed" record to allow the agency to consider the severity and duration of any alleged impairment. *Id.* And as indicated above, the EMGs confirmed Plaintiff had significant neurological deficits.

Plaintiff cannot be faulted for trying to document his condition, especially when the ALJ later pointed to an alleged lack of objective test results in finding Plaintiff not credible.

Where, as here, there is no evidence of malingering, the ALJ may only reject the claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, none of the ALJ's reasons for finding Plaintiff not credible as to the extent of his right arm and hand impairments survives scrutiny. Additionally, as discussed below, the opinions of all of Plaintiff's treating providers only support Plaintiff's subjective reports of his limitations.

Plaintiff also challenges the ALJ's finding that the opinions of the state reviewing physicians were more persuasive than those of Plaintiff's treating physicians. As relevant here, the ALJ concluded Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds. *See* C.F.R. § 404.1567(b) (light work involves lifting no more than 20 pounds and frequent lifting of 10 pounds). The ALJ also concluded Plaintiff could occasionally handle and finger with his right extremity. Tr. 21. In making this determination, the ALJ gave great weight to the opinions of the reviewing agency physicians. Tr. 23. The ALJ found those opinions "persuasive because [they are] consistent with the claimant's treatment records and objective testing. Additionally, their opinions are based on a review of the claimant's medical records and they are skilled experts in the area of disability evaluation." Tr. 23.

Conversely, the ALJ found the opinions of Dr. Bigley and Dr. Kiley, who concluded Plaintiff could not lift more than 10 pounds, less persuasive. Tr. 23. The ALJ noted Plaintiff had full strength in his left arm and legs and concluded the treating records indicate Plaintiff could perform light work. Finally, the ALJ indicated the RFC as to Plaintiff's postural limitations with

respect to his right arm were consistent with the treating records of the treating physicians. Tr. 23. The Court disagrees.

Previous regulations gave more weight to treating and examining medical opinions. 20 C.F.R. § 416.927(c)(1)–(2); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, new agency regulations took effect on March 27, 2017. Under these regulations, the agency does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Rather, under the new regulations, an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ must consider the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). As always, the ALJ's findings must be supported by substantial evidence in the record. 42 U.S.C. § 405(g).

As with the ALJ's credibility determination discussed above, the ALJ's findings regarding the persuasiveness of the state reviewing doctors' opinions is not supported by substantial evidence in the record. The reviewing physicians provided their opinions in July and December 2017. Tr. 52-61, 63-73. Those doctors did not have the benefit of the results of the third EMG, which only occurred several months after they formed their opinions. Additionally, the reviewing physicians did not have the benefit of reviewing the late 2018 function reports

where Dr. Bigley and Dr. Kiley provided specific recommendations on Plaintiff's limitations based on their multi-year treating relationship with Plaintiff.[3]

The May 2018 EMG, conducted nearly six months and one year respectively after the state reviewing physicians provided their opinions, showed: "Continued severe active right-sided brachial plexopathy/mononeuritis multiplex, primarily involving radial and ulnar nerve supplied muscles with C7 and C8 myotomes. Since testing done last year, sensory responses are more attenuated (with the ulnar now being absent), ulnar motor nerve is markedly attenuated, and now all motor nerves show prolonged distal latencies." Tr. 308. The reviewing physicians did not have Dr. Bigley's May 2018 treating note stating "it looks like his disability likely is going to be static." Tr. 307.

Here, there is no doubt that Plaintiff had severe restrictions with his right arm and hand. Dr. Bigley treated Plaintiff for four years, seeing Plaintiff approximately 5-7 times each year. Tr. 287. In October 2018, Dr. Bigley stated Plaintiff's brochial plexus neuropathy was expected to continue indefinitely. Tr. 287. Dr. Bigley opined Plaintiff could never lift or carry 20 pounds due to right arm weakness and numbness. Tr. 289. Although Dr. Bigly noted Plaintiff was not limited with his left arm, Plaintiff had less-than 1% use with right hand grasping, turning, and twisting objects, less-than 1% use of his right fingers for manipulation, and approximately 5% use of his right arm for reaching. Tr. 290. Plaintiff would require breaks after using his right hand or fingers. Tr. 290. Dr. Bigley concluded Plaintiff "is unable to really use his [right] hand," which limits his ability to perform work. Tr. 291.

Dr. Bigley's opinion essentially mirrors that of the treating specialist, Dr. Kiley. Dr. Kiley diagnosed "right arm weakness secondary to diabetic brachial plexopathy suffered in

---

[3] In fact, both reviewing physicians specifically noted "there is no indication that there is a medical opinion from any medical source." Tr. 59, 71.

2016." Tr. 293. Much like Dr. Bigley, Dr. Kiley opined Plaintiff could not perform any fine manipulations with right fingers, and could not perform any grasping, turning, or twisting with his right hand. Tr. 296. "He would have to do a job which did not require [right] arm usage." Tr. 297. The state reviewing physicians, who concluded Plaintiff was in fact capable of light work, never saw the above opinions from doctors who had a multi-year treating relationship with Plaintiff. The reviewing physicians never learned that Dr. Bigley, who treated Plaintiff on at least twenty appointments over four years, concluded Plaintiff could never lift 20 pounds. That opinion is in direct contrast with the reviewing physicians' opinions that Plaintiff could occasionally lift and carry 20 pounds.[4] The reviewing physicians (one general practitioner and one specializing in internal medicine) never learned that treating neurologist Dr. Kiley believed Plaintiff would not be able to perform any job requiring the use of his right arm. Tr. 297.

The reviewing physicians' opinions are not consistent with or supported by the record, which demonstrates Plaintiff is unable to occasionally lift 20 pounds required to perform light work. Although the reviewing physicians reviewed the record up to late 2017, neither physician had the benefit of reviewing the third EMG, treating notes throughout 2018, or the treating physicians' opinions provided in late 2018. Additionally, the ALJ's RFC that Plaintiff could occasionally handle and finger with his right extremity contrasts with the opinions of Dr. Bigly and Dr. Kiley. As noted, Dr. Kiley believed Plaintiff could not perform any work functions with his right hand. Tr. 297. And Dr. Bigley specifically opined that Plaintiff had less-than 1% use of his right hand for handling or fingering. Tr. 290. Finally, the ALJ's RFC contrasts with Dr. Bigley's opinion that Plaintiff would require breaks after using his right hand or fingers. Tr. 290.

---

[4] The only other relevant medical opinion was that of Mr. Sawyer, a physician assistant. After examining Plaintiff in November 2016 Mr. Sawyer noted Plaintiff should not lift more than 10 pounds. Tr. 259. Mr. Sawyer formed this opinion after "physical exam shows atrophy of the ulnar hand muscles and near absent sensation that splits the ring finger and involves the entire fifth finger." Tr. 257. The ALJ did not mention Mr. Sawyer's opinion.

10 – OPINION AND ORDER

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

This is a rare instance where remand for an award of benefits is appropriate. The record demonstrates the opinions of the treating physicians are most consistent with, and supported by, the record as a whole. Those opinions, along with Plaintiff's own testimony, demonstrate he is limited to sedentary work. There is no dispute that if limited to sedentary rather than light work, Plaintiff is disabled under the regulations.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

11 – OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is REVERSED and this matter is REMANDED to the

Commissioner for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 28th day of September, 2021.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge